IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GLEN WANDREY, individually and
on behalf of all others similarly situated                                    PLAINTIFF

v.                                              Case No. 5:14-CV-05087

CJ PROFESSIONAL SATELLITES,
INC., CJ'S SATELLITE COMPANY,
and JULIA ANDERSON                                                            DEFENDANTS

<u>**OPINION AND ORDER**</u>

Currently before the Court are Defendants CJ Professional Satellites, Inc.'s ("CJPS"),

CJ's Satellite Company's ("CJSC"), and Julia Anderson's motion to dismiss (Doc. 11) and brief

in support (Doc. 12), Plaintiff Glen Wandrey's response (Doc. 14), and Defendants' reply (Doc.

17) filed with leave of the Court.   Defendants move to dismiss Wandrey's complaint with

prejudice under Federal Rule of Civil Procedure 12(b)(6).   For the reasons explained below

Defendants' motion to dismiss will be DENIED.

**I.      Background[1]**

Wandrey alleges in his complaint that from October to December of 2013 he was a

satellite installation and repair technician working for Defendants.   Defendants are engaged in

the business of installing satellite systems under a contract with Dish Network.   CJPS and CJSC

are Arkansas corporations with their principal place of business in Harrison, Arkansas and

additional offices in Oklahoma, Louisiana, and Tennessee.   They share the same registered

agent.   CJPS and CJSC are owned by Anderson, who is also president of both companies.

---

[1] In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the
non-moving party and grant all reasonable inferences from the pleadings in favor of the non-
moving party."   *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458,
462 (8th Cir. 2000).

1

Wandrey began working as a satellite technician for Defendants in October 2013 and quit in December 2013.  During that time, Wandrey's work hours were controlled by Defendants. Wandrey alleges that he worked for Defendants between 60 and 70 hours per week and occasionally more.  His jobs were assigned by Defendants, who decided the order in which assignments were to be performed.  He was not allowed to turn down assignments and was required to wear a uniform provided by Defendants.  The parts, equipment, and some of the tools used by Wandrey were determined, and in some cases provided by, Defendants.  Wandrey was required to purchase other parts and equipment directly from Defendants.  There is no allegation that any of these matters were subject to negotiation between Wandrey and Defendants.

Wandrey was usually paid on a per assignment basis.  In some cases, however, Defendants required Wandrey to perform "service calls" and did not compensate him for these assignments.  The rate paid per assignment was set by Defendants and was based on a skill-assessment level assigned by Defendants.  Wandrey also alleges that he spent approximately two weeks in training for the job, for which he was not compensated, and that he was required to provide his own fuel, without reimbursement, to get to and from various assignments.  During the time Wandrey worked for Defendants, they classified him as an independent contractor. When he quit his job, Defendants did not give him his final paycheck.

Wandrey brought this lawsuit after quitting, alleging that Defendants willfully misclassified him as an independent contractor.  He claims that he should have been classified as an employee under the Fair Labor Standards Act ("FLSA"),[2] and was entitled under that law to compensation and protections which Defendants denied to him.  In particular, Wandrey alleges that Defendants willfully refused to classify him as an employee so that they could avoid paying

---

[2] 29 U.S.C. §§ 201–19.

2

him minimum wage and overtime rates required by the FLSA.  He claims that Defendants violated 29 U.S.C. § 206(a)(1)[3] by failing to pay him at the appropriate minimum wage rate for the hours he worked and that Defendants willfully violated 29 U.S.C. § 207(a)(1)[4] by failing to pay him time-and-a-half for overtime hours worked.  Wandrey alleges that there are other similarly-situated satellite technicians who worked for Defendants, were misclassified as independent contractors, and were also denied minimum wage and overtime compensation. Wandrey also alleges on his own behalf that he is entitled to damages and interest for his unpaid wages under Arkansas law.  Wandrey seeks damages; costs, expenses, and reasonable attorneys' fees; declaratory relief; a permanent injunction requiring Defendants to comply with the FLSA; and such further relief as the Court deems appropriate.

## II.   Discussion

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).  To survive dismissal under that Rule, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Those alleged facts must be specific enough "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[3] In relevant part, this section requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates . . . ."

[4] In relevant part, this section requires that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id*. "The Rules of Civil Procedure do not require that a plaintiff shall plead every fact essential to his right to recover the amount which he claims." *Sparks v. England*, 113 F.2d 579, 581 (8th Cir. 1940). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, --U.S--, 131 S.Ct. 1289, 1296 (2011). Where the facts alleged, taken as true, "raise a reasonable expectation that discovery will reveal evidence of illegal [activity]," the Court should deny a motion to dismiss. *Twombly*, 550 U.S. at 556.

Defendants raise several issues in their motion to dismiss. They argue that Wandrey has failed to adequately plead: (1) that Defendants constitute a single enterprise or are joint employers and that Anderson can be held individually liable under the FLSA; (2) that Wandrey was an "employee" of Defendants as that term is used in the FLSA, and that an employer-employee relationship existed between the parties; (3) that the FLSA applies to either Wandrey or Defendants; (4) that any violation of the FLSA was willful; and (5) that Wandrey's complaint can support a collective action. Wandrey's response argues to the contrary on all of these issues. Defendants reply that Wandrey misconstrues the law regarding an employment relationship and that allegations that Defendants intentionally misclassified Wandrey as exempt do not show willfulness.

### A.      Single Enterprise or Joint Employer

Defendants first argue that Wandrey has not adequately pleaded that they are a single enterprise or joint employers. As a result, they argue that Wandrey's complaint is deficient because it does not identify which particular actions were taken by any particular Defendant,

4

does not support holding Anderson individually liable, and does not identify which Defendant allegedly employed Wandrey. Wandrey responds that he has specifically alleged that each Defendant is his employer under the FLSA, and cites to paragraphs three through seven of his complaint. He also cites to post-*Twombly* and *Iqbal* decisions denying a motion to dismiss on the issue of joint employers or single enterprises.

Under the FLSA, "'enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units." 29 U.S.C. § 203(r). For Defendants to be a single enterprise, they must have "(1) related activities; (2) unified operation or common control; and (3) a common business purpose." *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975). Wandrey has alleged that CJPS and CJSC are contractors for Dish Network owned and operated by Anderson, that Defendants install Dish Network residential products and services, and that they hire satellite technicians to perform the installation and service work. Considering the expansive FLSA definition of "enterprise," Wandrey has alleged sufficient facts, taken as true, to show that Defendants are an enterprise.

Wandrey has also alleged that Anderson was a joint employer with CJPS and CJSC. The FLSA broadly defines "employer" as inclusive of "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act." *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). On its face the definition of "employer" can be read to cover owners or officers of a corporation in their individual capacities. *See Darby v. Bratch*, 287 F.3d 673,

681 (8th Cir. 2002) ("We implicitly assumed in *Rockney* [*v. Blohorn*, 877 F.2d 637 (8th Cir. 1989)] that individual liability does exist under the FLSA.").  The Eighth Circuit has implied that a corporate officer with operational control of the corporation's day-to-day functions can be an employer within the meaning of the FLSA if the officer actually supervises the relationship between the corporation and its employees.  *Wirtz v. Pure Ice Co., Inc.*, 322 F.2d 259, 262–63 (8th Cir. 1963).  It has also held that an individual who was the primary shareholder, as well as president and general manager, of a corporation, and who engaged in "active management" of the corporation—hiring supervisors and home office workforce and subjecting the wages of the corporation's employees to his control, if only in varying degrees—could be an employer under the FLSA.  *Chambers Constr. Co. v. Mitchell*, 233 F.2d 717, 724 (8th Cir. 1956).  Other courts in this circuit have found that when a corporate officer is an employer under the FLSA, he can be held jointly and severally liable along with a corporation for the unpaid wages of the corporation's employees.  *Brown v. L & P Indus., LLC*, 2005 WL 3503637, at *12 (E.D. Ark. Dec. 21, 2005) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511–14 (1st Cir. 1983)).

Wandrey has alleged that Anderson, as one of the Defendants, was involved in setting wages for the enterprise.  He has also alleged that Anderson not only owns but is president of the Defendant corporations.  These allegations are sufficient at the pleading stage to support an inference that Anderson has operational control over the corporations' day-to-day activities.  Wandrey has also alleged that both CJPS and CJSC, as part of the enterprise, were involved in setting wages and that all Defendants were involved in controlling the work satellite technicians performed.  He has therefore pleaded sufficient facts for the Court to infer that Defendants are an enterprise and each is an employer under the FLSA.  Whether Wandrey has pleaded that they are *his* employer will be considered below.

6

Because they are alleged to be joint employers and part of an enterprise, all Defendants are alleged to have committed the violations Wandrey pleads.  Because CJPS and CJSC share Anderson as an owner and president, it does not appear to be an "impossible task," either now or in discovery, to "ascertain[] what particular unlawful acts [Defendants] are alleged to have committed."  (Doc. 17, p. 3).  Should discovery reveal otherwise, or establish that Anderson or CJSC was not part of an enterprise with CJPS, or that Anderson did not have operational control over the corporations' day-to-day activities, the enterprise and joint employer issues may be revisited at a later date.

**B.      Employer-Employee Relationship**

Defendants argue that Wandrey has failed to plead facts sufficient to show that an employer-employee relationship covered by the FLSA existed between the parties.  Defendants point to factors that courts in the Eighth Circuit use to determine whether such a relationship exists, and argue that Wandrey has not alleged any facts that show that Defendants had the power to hire or fire him or that Defendants determined the rate and method of payment—two of the factors often used.  Wandrey responds that the test for an employer-employee relationship under the FLSA is not as rigidly dependent on meeting all factors as Defendants argue, but instead is determined on a "totality of the circumstances" standard.  Defendants reply that courts routinely dismiss FLSA claims when complaints merely parrot the elements with no factual support.

Perhaps because it is defined so broadly in the FLSA, the Eighth Circuit has not formulated a rigid test for determining whether an employer-employee relationship exists. Instead, it looks to the economic realities of the relationship. *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005).  Among the factors some courts in this circuit have examined when making this

inquiry into economic realities are: (1) control over hiring, firing, and hours of employees; (2) control over the manner in which the work is performed; (3) control over rate and method of payment; (4) maintenance of employment records; (5) the alleged employee's opportunity for profit or loss;  (6) the alleged employee's investment in equipment or materials, and whether he employs workers; (7) whether the work requires special skill; (8) the contemplated duration of the working relationship; and (9) the extent to which the work is integral to the alleged employer's business.  *McClean v. Health Sys., Inc.*, 2011 WL 2650272, *2 (W.D. Mo. July 6, 2011); *Helmert v. Butterball, LLC*, 2010 WL 779321, *3 (E.D. Ark. Mar. 5, 2010); *Dole v. Amerilink Corp.*, 729 F.Supp. 73, 76 (E.D. Mo. 1990).  These factors are not exclusive, and employment status under the FLSA is not dependent on a single factor, but is determined after examining the totality of the circumstances.  *Barnett v. Young Men's Christian Ass'n, Inc.*, 175 F.3d 1023, *1 (8th Cir. 1999) (unpublished); *Marshall v. Truman Arnold Distrib. Co., Inc.*, 640 F.2d 906, 908 (8th Cir. 1981) ("The determination of the [employer-employee] relationship depends upon the circumstances of the whole activity." (quotation omitted)); *see also, e.g.*, *Baystate*, 163 F.3d at 675 (explaining no factor is dispositive and the totality of the circumstances controls); *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998) (same); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (same).  "Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947).

Defendants' arguments on this issue at the motion to dismiss stage are for the most part unfounded.  First, despite Defendants' claims in their brief, Wandrey has in fact alleged that Defendants set his rate of compensation.  (Doc. 1, ¶ 24).  That he did not allege a negative—e.g.,

"Wandrey's rate and method of pay were not the product of negotiations but were unilaterally set by Defendants"—does not render his complaint legally inadequate.  Second, Wandrey has also alleged that he was working for Defendants.  (Doc. 1, ¶ 14).  Again, that he did not allege a negative—e.g., "Wandrey was not a volunteer"—and did not explicitly allege that his work resulted from being hired by defendants is not fatal at the motion to dismiss stage.  Furthermore, it is clear that, at the very least, Wandrey worked for at least one Defendant in some capacity.  (Doc. 12, n.1 ("Wandrey actually performed services for CJ's Professional Satellites, Inc. for only three weeks in 2013 . . . .")).  Drawing reasonable inferences in Wandrey's favor, the Court can infer that Wandrey began working as a result of being hired.[5]  That Wandrey alleges that he "quit," rather than that he terminated his contract with Defendants, or chose not to bid on future installation jobs, or similar, further supports that he has adequately pleaded an employer-employee relationship.

In his complaint, Wandrey alleges that Defendants controlled the time he was required to arrive at work, which jobs he would be assigned each day, the order in which he was required to complete assignments, and whether he could leave assignments until the next day.  He alleges that Defendants required him to wear a uniform and use certain parts, equipment, and tools,[6] some of which Defendants provided and some of which Wandrey was required to purchase from Defendants.  He also alleges that Defendants controlled the rate at which he was compensated,

---

[5] Indeed, it would be unreasonable to infer at this stage that Wandrey unilaterally began working for Defendants without their agreement that he should do so.

[6] Defendants' brief in support of their motion emphasizes that "Wandrey *does not* allege that the actual *tools* used to perform the installation and repair services are provided to technicians by any Defendant."  (Doc. 12, p. 7 (emphases in original)).  In paragraph 20 of the complaint Wandrey alleges that among the items provided to him by Defendants were "a Galaxy Tablet, [and] a Super Sat Buddy Meter."  The Court infers that the tablet computer and Super Sat Buddy Meter are "tools" Wandrey used to complete his job.  Evidence exchanged in discovery may reveal otherwise, and defendants may later raise their tools argument when the merits are to be determined.

and that he was compensated by paycheck (rather than, for instance, by submitting an invoice to Defendants' billing departments). Defendants argue that Wandrey has not satisfied all of the factors necessary to show an employer-employee relationship. To be classified as an employee under the FSLA, however, it is not necessary that every factor be satisfied in Wandrey's favor. Wandrey has alleged sufficient facts to support the existence of an employer-employee relationship, and the parties are entitled to discovery and a merits determination on that issue.

C.      **Applicability of the FLSA to the Parties**

Defendants argue that Wandrey has failed to plead FLSA applicability to this dispute because he has not alleged facts showing that he or Defendants were engaged in commerce or the production of goods for commerce. Wandrey responds that Defendants improperly seek to narrow the broad coverage Congress intended in the FLSA, and cites to various cases and paragraphs of his complaint that factually allege that Defendants are engaged in interstate commerce. In particular, Wandrey points out that he has alleged that Defendants are contracted with Dish Network (a national company) to install Dish Network residential products and services; that Defendants maintain offices in multiple states; and that Wandrey has actually performed work for Defendants in two of those states.

Defendants' arguments on FLSA applicability border on frivolous. They are correct that Wandrey has minimum wage and overtime claims under the FLSA only if he is an employee engaged in or employed in an enterprise engaged in interstate commerce or the production of goods for interstate commerce. 29 U.S.C. §§ 206(a), 207(a). It has long been established, however, that "[t]hose persons who are engaged in maintaining and repairing such facilities [that are instrumentalities of interstate commerce] should be considered as 'engaged in commerce' . . . because without their services these instrumentalities would not be open." *Overstreet v. North*

10

*Shore Corp.*, 318 U.S. 125, 129 (1943).  This principle applies to "employees of contractors" when the employees repair instrumentalities of interstate commerce.  *McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943).  As long ago as 1967, the District Court for the Southern District of Indiana applied these principles to telecommunications and explained that:

> The employees of the defendant who were engaged in 'installing, operating, maintaining, servicing, and constructing apparatus and equipment which is utilized to relay national television broadcasts to defendant's subscribing customers', as alleged in the complaint, are engaged in such work as would satisfy the test set down by the Supreme Court—that such employment be 'so directly and vitally related to the functioning of an instrumentality . . . of interstate commerce as to be, in practical effect, a part of it.

*Wirtz v. Indiana Cablevision, Inc.*, 270 F. Supp. 973, 977 (S.D. Ind. 1967) (quoting *Mitchell v. C. W. Vollmer & Co.*, 349 U.S. 427, 429–30 (1955)).

Here, Wandrey alleges that he installed and serviced satellite equipment for contractors of Dish Network in both Arkansas and Oklahoma.  Based on Wandrey's allegations, it is plausible that both he and Defendants were engaged in commerce under the meaning of the FLSA when they undertook to install and service Dish Network satellite systems capable of receiving national television broadcasts.  Defendants' citations to cases involving residential handymen and automobile repossessors who did only local—rather than interstate—work, and whose claims to FLSA coverage were based largely on use of phones or credits cards, are inapposite.

### D.    Willfulness

A violation of the FLSA is "willful" when an "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "[I]t is virtually impossible for an employer to show that he was unaware of the Act and its potential applicability."  *Id.* (quotation omitted); *cf.*

29 C.F.R. § 516.4 (requiring "[e]very employer employing any employees subject to the Act's minimum wage provisions" to conspicuously post notice explaining the Act).  Considering the alleged scope of Defendants' business, which operates across three states, the Court can infer on a motion to dismiss that they were aware of the potential for FLSA coverage.  Wandrey has also pleaded that Defendants classified him as an independent contractor.  The Court can infer from the alleged act of distinguishing workers by the classification of "independent contractor" rather than "employee" that Defendants were aware of the exemptions from FLSA wage and hour provisions, and of the difference between exempt and non-exempt personnel.  Finally, Wandrey has alleged sufficient facts for the Court to infer that he was an employee under the FLSA.  Taken together, these facts and inferences suggest that Defendants knew of the potential for FLSA coverage, knew based on the nature of his work that Wandrey should have been covered, and chose to classify him in such a way that he would not be covered.  This is sufficient to survive a motion to dismiss on the issue of willfulness.

   **E.**  **Collective Action**

   Defendants argue that Wandrey's complaint cannot support collective action because he has failed to plead or define any attributes of the alleged similarly situated employees who might opt in to an FLSA collective action.  This Court agrees with the Western District of Missouri that when a Plaintiff has adequately alleged a violation of the FLSA, "a motion to dismiss is not the proper vehicle to address the validity of the collective/class allegations.  *Arnold v. DirecTV*, 2011 WL 839636, *7 (W.D. Mo. March 7, 2011).  Defendants can raise their arguments against collective action when and if Wandrey moves to conditionally certify a collective action or moves for class certification under Rule 23.

**III.**  **Conclusion**

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 11) is DENIED, and Plaintiff's claims remain pending.

IT IS SO ORDERED this 9th day of September, 2014.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE